STATE OF FLORIDA, ex rel. R. F. NEAFIE, v. B. F. BUT-LER, B. W. STRICKLAND and H. G. LABREE, as and Constituting the members of BROWARD COUNTY PORT AUTHORITY, a Florida public corporation, et al.

10 So. (2nd) 572                                        Division B
November 3, 1942        Rehearing Denied November 27, 1942

Manley P. Caldwell and Alec Baker, for appellant.
R. R. Saunders, for appellees.

CHAPMAN, J.:

The record in this case discloses that a peremptory writ of mandamus, on February 9, 1937, issued out of the Circuit Court of Broward County, Florida, in the case of State of Florida ex rel. R. F. Neafie, relator, v. Broward County Port Authority, et al., respondents. The peremptory writ adjudicated and awarded $46,086.00 to the relator and the Port Authority, et al., were commanded to levy assessments upon the assessment rolls of Broward County for the fiscal years 1937, 1938, 1939, 1940, 1941, 1942, 1943, 1944, 1945, and 1946, and collect taxes and pay the amount collected, as and when collected, until the aggregate amount of $46,086.00 was paid. The Port Authority

obeyed the peremptory writ for the fiscal years 1937, 1938 and 1939, when approximately $14,000.00 was received from the taxes so levied. The Port Authority failed to make the levy for the fiscal years 1940 and 1941, and failed to pay any portion of the proceeds of the levies of prior years to the relator.

On December 3, 1941, the relator, R. F. Neafie, filed in the Circuit Court of Broward County a petition for a rule directed to the members of the Broward County Port Authority commanding them to appear and show cause why they should not be adjudged in contempt of court for their failure to obey the commands of the peremptory writ in not paying to the relator collections received for the fiscal years 1937, 1938 and 1939, and for not levying assessment for taxes for the fiscal year 1940 and 1941.

The rule to show cause issued and the Port Authority filed an answer admitting the levy for the fiscal years 1937, 1938 and 1939, and the collection of $14,023.92 and represented that it was ready, able and willing to pay the amount so collected as commanded by the peremptory writ, but was temporarily restrained therefrom, as well as from making further assessments and collections under the peremptory writ for the fiscal years 1940 to 1946, both inclusive, under an order entered by the Circuit Court of Broward County, Florida, in chancery, in the suit of Bond & Tax Adjustment Bureau, Inc., v. Alton M. Ake, Chancery Case No. 8841, and on July 27, 1940, the Circuit Court of Broward County in the aforesaid chancery suit restrained a compliance with the commands of the peremptory writ as to the levy, assessment and collection of a tax for the fiscal years 1940, to 1946, inclusive, until the further order of the court.

The Port Authority filed a motion to discharge the rule to show cause; likewise a motion to stay proceedings because of certain allegations appearing in two certain suits in chancery then pending in the same court in which it was made to appear by appropriate allegations of fact that error, fraud and mistake existed in the original mandamus proceedings, resulting in the issuance of a peremptory writ. On the issues presented a hearing was had and testimony adduced and the original court files in the two chancery suits, viz.: Bond & Tax Adjustment Bureau, Inc., v. Alton M. Ake, et al., Chancery Case No. 8841, and Broward County Port Authority v. Neafie, Chancery Case No. 9279, were offered in evidence, and also affidavits of Marvin H. Rorick and Alec Baker, and described coupons, and the Court, after considering the petition for a rule to show cause, the answer thereto, the motion to discharge and the motion to stay proceedings and the evidence offered by the respective parties, on February 11, 1942, entered an order discharging the rule to show cause and dismissed the relator's petition, and from this said order an appeal has been perfected to this Court.

The peremptory writ adjudicated the sum due by the Broward County Port Authority to R. F. Neafie on February 9, 1937, at the sum of $46,086.00 and ordered levied upon the assessment rolls of Broward County for the fiscal years 1937 to 1946, inclusive, a tax and the collection and payment thereof to the relator. An appeal therefrom was never taken and the judgment stands in force and effect without a single modification. The terms of the writ for three years were partially obeyed but the moneys collected were

not paid to the relator and a levy for the subsequent years never made or the tax collected in derogation of the commands of the peremptory writ.

On the Chancery side of the Circuit Court of Broward County, Florida, the Bond & Tax Adjustment Bureau, Inc., on February 24, 1938, filed a bill of complaint against R. F. Neafie (the relator in the mandamus suit) and others. The court temporarily restrained the Port Authority from paying to the relator in the mandamus suit any of the money found to be due him in the mandamus suit until a further order of the court. On July 27, 1940, a subsequent order was entered in which it was ordered that R. F. Neafie report to the (Chancery) Court why he presumed to act as substitute trustee over the described coupons mentioned in the mandamus suit.

The second suit on the Chancery side of the Circuit Court of Broward County was filed October 18, 1941, by the Broward County Port Authority against R. F. Neafie (the relator in the mandamus suit) and a prayer of the bill of complaint is that the peremptory writ of mandamus, *supra,* be set aside, cancelled and declared of no force or effect. While counsel have posed several questions for adjudication that accurately present the merits of the litigation, it appears that the tap root of the entire controversy is whether or not a court of equity has the jurisdiction and power to restrain a compliance with a lawfully entered and unmodified peremptory writ of mandamus?

The peremptory writ commanded that a tax be levied upon the assessment rolls of Broward County for the fiscal years from 1937 to 1946, inclusive, for the purpose of the liquidation and payment of the aggregate sum of $46,086 and interest adjudged to be due by the respondent to the relator and the amount

collected annually was to be paid to the relator when annually collected. It is admitted that levies and collections were made for the years 1937, 1938 and 1939 but the sums so collected were not paid by the respondents to the relator as commanded by the writ. We fail to find in the record a certificate of part performance of the commands of the terms of the peremptory writ. It was the legal duty of the respondents to file in the Circuit Court of Broward County the certificate showing detailed performance, in part, of the commands of the peremptory writ. See State ex rel. Havana State Bank v. Rodes, 124 Fla. 288, 168 So. 249; State ex rel. Fupont Ball Inc. v. Livingston, 104 Fla. 33, 139 So. 360; State ex rel. Dos Anigos, Inc., v. Lehman, 100 Fla. 1313, 131 So. 533; State v. Tavares, etc., R. Co., 78 Fla. 329, 82 So. 833; State v. McLin, 16 Fla. 17; State v. Florida Coast Line Canal, etc., Co., 73 Fla. 1006, 75 So. 582, L.R.A. 1917F, 776; State v. Board of County Canvassers, 17 Fla. 9.

It is contended that the lower court erred in entertaining jurisdiction of the two equity suits, *supra,* and restraining until the further order of the court the enforcement of the aforesaid peremptory writ. The cases cited and relied upon to sustain this view are Sauls v. Freeman, 24 Fla. 225, 4 So. 577; Finegan v. Fernandina, 18 Fla. 127; Columbia County v. Bryson, 13 Fla. 281. The answer of the respondent to this contention is that the chancery court had jurisdiction to restrain the enforcement of the terms of the peremptory writ because of fraud, deceit, artifice and trickery perpetrated by the relator on the court in the mandamus proceedings, and they cite and rely upon Miller v. Miller, 149 Fla. 722, 7 So. (2nd) 9; Jeffery Lumber Co. v. Coleman, 704 Fla. 149, 6 So. (2nd) 821;

Columbus Hotel Corp. v. Hotel Managers, 116 Fla. 464, 156 So. 893. It is not contended that the final judgment in the mandamus proceeding is a *brutum fulmen* that may be collaterally attacked within the rule of this Court enunciated in Kroier v. Kroier, 95 Fla. 865, 116 So. 753, and Watkins v. Johnson, 139 Fla. 712, 191 So. 2.

It is generally recognized that where a mandamus proceeding has been heard and decided on its merits, the judgment rendered is conclusive against the parties and the several issues of law and all matters of fact directly involved and determined, and stands as the law of the case until reversed or set aside. When the court had jurisdiction of the parties and subject matter of the litigation in a mandamus proceedings, its judgment therein rendered cannot be collaterally attacked. See Sauls · v. Freeman, *supra*; State v. Homestead, 125 Fla. 105, 169 So. 593.

The rule for interference by a court of equity in common law cases for some reason or another that have been wrongfully tried and decided by the law courts was given by Lord Redesdale and stated by Pomeroy's Equity Jurisprudence, Vol. 4 (5th Ed.), par. 1361, page 975, viz.:

" 'It is not sufficient to show that injustice has been done, but that it has been done under circumstances which authorize the court to interfere. Because if a matter has already been investigated in a court of justice, according to the common and ordinary rules of investigation, a court of equity cannot take on itself to enter into it again. Rules are established, some by the legislature, some by the courts themselves, for the purpose of putting an end to litigation, and it is more

important that an end should be put to litigation, than that justice should be done in every case . . . The inattention of parties in a court of law can scarcely be made a subject for the interference of a court of equity. There may be cases cognizable at law and also in equity, and of which cognizance cannot be *effectually* taken at law; and therefore equity does sometimes interfere, as in cases of complicated accounts, where the party has not made a defense, because it was impossible for him to do it effectually at law. So where a verdict has been obtained by fraud, or where a party has possessed himself improperly of something, by means of which he has an unconscientious advantage at law, which equity will put out of the way or restrain him from using. But without circumstances of that kind, I do not know that equity ever does interfere to grant a trial of a matter which has already been discussed in a court of law—a matter capable of being discussed there, and over which a court of law had full jurisdiction.' "

We do not have presented for determination on this record by appeal the merits of the orders and decrees entered in the two equity cases. The files were adduced in evidence and considered in the lower court in connection with the issues made on the hearing on the rule to show cause. While the only response to the commands of a peremptory writ is a certificate of literal compliance, there does exist, however, a recognized exception which is clearly and accurately set forth in State ex rel. Davis v. Atlantic Coast Line R. Co., 103 Fla. 1204, 140 So. 817, 824.

Allegations of the peremptory writ are viz.:

". . . and it appearing unto the Court that the responses herein filed by said respondents fail to show

any good and sufficient reason why a peremptory writ should not be awarded; and it further appearing unto the court, and the Court so finds, that there is due relator herein the sum of Forty Six Thousand Eighty Six ($46,086.00) Dollars upon and by virtue of the interest coupons described in the alternative writ herein as the same stands amended; and the premises being otherwise duly considered, it is thereupon"

The amount due and the ownership of the interest coupons appear to have been considered by the terms of the peremptory writ. The rule applicable to the case at bar is the exception enunciated in State ex rel. Durrance v. City of Homestead, 125 Fla. 105, 169 So. 593, viz.:

"The only exception to the foregoing rule is where *subsequent* to a judgment awarding a peremptory writ of mandamus a supervening and superogatory authority has made the doing of the acts commanded unlawful or impossible thereby bringing about a change of conditions occurring *after* the issuance of the peremptory writ that thereupon make compliance with its commands improper to be exacted, in which case a special return in the nature of a petition for stay of execution of the temporary writ is tolerated and allowed to be interposed for consideration by the court, in order that the innocent respondents may be enabled to protect themselves against conflicting requirements of two conflicting jurisdictions. In the latter instance, if the special return be ascertained to be well founded, the state court may stay the execution of its peremptory process of mandamus upon the same principle that it is allowed to stay under like circumstances the enforcement of any final process of execution that has been issued by its command or authority."

See State ex rel. Davis v. Atlantic Coast Line R. Co., supra.

The judgment appealed from is reversed with directions for further proceedings in the lower court not inconsistent with this opinion.

It is so ordered.

BROWN, C. J., TERRELL, and THOMAS, JJ., concur.

ON PETITION FOR REHEARING

CHAPMAN, J.:

On petition for rehearing it is contended that the order restraining the enforcement of the peremptory writ of mandamus so as to prevent fraud, deceit, artifice and trickery was in accord wtih the previous rulings of this Court and within the exception referred to in State ex rel. Davis v. Atlantic Coast Line R. Co., 103 Fla. 1204, 140 So. 817, 824; State ex rel. Durrance v. City of Homestead, 125 Fla. 105, 169 So. 593, and Pomeroy's Equity Jurisprudence, Vol. 4 (5th Ed.) par. 1361, p. 975. The answer to this contention is that the peremptory writ of mandamus is not a brutum fulmen, subject to collateral attack and not within the rule enunciated in Kroier v. Kroier, 95 Fla. 865, 116 So. 753, and Watkins v. Johnson, 139 Fla. 712, 191 So. 2.

The Circuit Court of Broward County had jurisdiction of the subject matter and the parties when entering the peremptory writ of mandamus. It was the legal duty of the respondents in the mandamus proceedings to obey the commands of the peremptory writ and file therein a certificate showing, in part, a detailed performance of the commands of the peremptory writ. See State ex rel. Havana State Bank

v. Rhodes, 124 Fla. 288, 168 So. 249; State ex rel. Durrance v. City of Homestead, 125 Fla. 105, 169 So. 593. The issue of fact viz.: "the amount due and the ownership of the interest coupons" was before the Court and placed at rest by the terms of the peremptory writ. It has not been made to appear that the court issuing the writ did not have jurisdiction of the subject matter and the parties.

We reiterate that the defense offered in the lower court for the discharge of the rule to show cause is legally insufficient. We have not had presented on this record a showing by the respondents legally sufficient to bring them within the exception of the rule enunciated in State ex rel. Durrance v. City of Homestead, *supra,* and we do not at this time consider, determine or adjudicate such a defense, if the same exists.

The merits of the motion for a clarification of the opinion as made by counsel for the appellant and the petition for a rehearing as made by counsel for the appellees have been carefully considered and we have concluded that the same should be and each is hereby denied.

It is so ordered.

BROWN, C. J., TERRELL, and THOMAS, JJ., concur.